James **BANKHEAD** and Charles **Ballard Plaintiffs**

v.

**ARKANSAS DEPARTMENT OF HUMAN SERVICES, an Agency of the State of Arkansas; Kirk Knickrhem, Director of the Arkansas Department of Human Services; Artee Williams, Deputy Director of the Arkansas Department of Human Services; Shelby McCook, Chief Fiscal Officer of the Arkansas Department of Human Services Defendants**

No. 4:01CV00853 WRW.

United States District Court, E.D. Arkansas, Little Rock Division.

May 7, 2003.

Marceliers Hewett, Attorney at Law, Little Rock, for James Bankhead, Charles Ballard, plaintiffs.

Lori Freno, Sherri L. Robinson, Jeffrey Ryan Priebe, Arkansas Attorney General's Office, Little Rock, for Arkansas Department of Human Services, an agency of the State of Arkansas, Kurt Knickrehm, Director of the Arkansas Department of Human Services; sued as Kirk Knickrhem, Artee Williams, Deputy Director of the Arkansas Department of Human Services, Shelby McCook, Chief Fiscal Officer of the Arkansas Department of Human Services, defendants.

### SUMMARY JUDGMENT ORDER

WILSON, District Judge.

Pending is Defendants' Motion for Summary Judgment (doc. no. 18). In their Complaint, Plaintiffs allege various causes of action relating to their employment with the Arkansas Department of Human Services ("DHS"). They name DHS and three of its employees, in both official and individual capacities, as Defendants. In their motion and supporting brief, Defendants claim they are entitled to summary judgment on all of Plaintiffs' claims. Plaintiffs have responded, asserting that summary judgment is inappropriate.

### Background

The following facts are not disputed. Plaintiffs James Bankhead and Charles Ballard are African–American males who are, and have been at all relevant times, employed by DHS. Bankhead began his employment with DHS in January 1972 and was promoted to the Grade 22 position of payroll manager in the General Operations Section in October 1995. Ballard began his employment with DHS in November 1988 and was promoted to a Grade 22 management position in the General Operations Section in 1995.

On September 17, 2000, separate Defendant Shelby McCook, a white male, was appointed to the position of Chief Fiscal Officer for DHS. In this position, McCook was, at all relevant times, a supervisor of both Plaintiffs. McCook's supervisor was Defendant Artee Williams, an African–American male and the Deputy Director of DHS. Defendant Kirk Knickrhem, a white male and Director of DHS, was Williams' supervisor. At all times referenced in Plaintiffs' federal court Complaint, Defendants were acting within the scope of their employment.

In February 2001, Linda Holmstrom, a white female, was hired into a Grade 99 position with the Office of Fiscal Management ("OFM") at DHS. Defendant McCook borrowed[1] the Grade 99 position

---

1. According to an internal office investigation, McCook called the Department of Mental Health Services ("DMHS") and asked to "borrow" a Grade 99 position that was funded through DMHS. He stated that he wanted to borrow the position because there was an employee he wanted to hire and he wanted to

from the Mental Health division. A Grade 99 position within DHS is an unclassified position which DHS is not required to advertise or post. The DHS Director must approve the hiring decision before an unclassified position can be filled.

On February 20, 2001, Plaintiffs Bankhead and Ballard, along with James Bowman, a white male, forwarded a formal complaint about the hiring of Ms. Holmstrom to Defendant Knickrhem, claiming that the hiring of Ms. Holmstrom involved a selective use of the hiring policy. Following a request by Defendant Williams, DHS's Office of Employee Relations conducted an investigation into the February 2001 complaint. At the conclusion of the investigation, Verma Simmons, an African-American female and the Administrator of the Office of Employee Relations, issued a memorandum to Knickrhem stating that her office found no evidence that the actions of McCook in hiring Holmstrom were based on race, sex, age, or any unlawful discrimination.

On March 22, 2001, Plaintiffs Bankhead and Ballard, along with James Bowman, forwarded another complaint to Williams. This complaint alleged retaliation by McCook. Following this complaint, Williams requested that the Office of Employee Relations conduct another investigation. Verma Simmons issued a memorandum to Williams stating that her office found none of the three complainants could state a prima facie case of retaliation because none of them could prove that McCook had knowledge of a complaint against him.

Plaintiff Ballard filed a charge with the EEOC on April 4, 2001, alleging discrimination based upon race, sex, and age, as well as retaliation. He stated that the last act of discrimination occurred on March 22, 2001. Ballard was issued a right to sue letter on or about April 17, 2001.

On April 5, 2001, Plaintiff Bankhead filed an EEOC charge, alleging discrimination based upon race and age, as well as retaliation. Bankhead was issued a right to sue letter on or about April 10, 2001.

In June 2001, in accordance with DHS policy, the Human Resources Department at DHS advertised and posted an opening for "DHS Business Manager." The position was a classified, Grade 24 position in the OFM and was to be under the supervision of Defendant McCook. The job description stated that the position was "governed by the Generally Accepted Accounting Principles, state and federal laws and agency policy."[2] The knowledge, abilities, and skills required for the position included, in part, "Knowledge of Generally Accepted Accounting Principles and fiscal management including payroll administration; Knowledge of state and federal accounting rules, budgetary procedures, regulations, policies and rules relating to payroll, information recording, reporting and auditing; ... Ability to plan and direct all phases of the general accounting functions; [and] ... Ability to interpret laws, policies, and procedures."[3]

Bankhead, Ballard, and Linda Holmstrom all submitted applications for the Grade 24 position. Each of them interviewed for the position. Defendant McCook conducted the interviews for all applicants, including Bankhead, Ballard, and Holmstrom.

According to Linda Holmstrom's employment application, she has a Bachelor

---

go ahead and put her on the job while other hiring processes were taking place. While she was in the Grade 99 position, Holmstrom's salary was actually paid by DMHS. *See* Doc. No. 23, Exhibit B at 7 and 9.

2. Doc. No. 18, Exhibit G at 1.

3. Doc. No. 18, Exhibit G at 3–4.

of Science in Business Administration ("BSBA") with a concentration in accounting and a Certified Public Accountant's ("CPA") license. She had previously served as Chief Financial Officer for over five years for various private companies; had worked in the areas of finance and tax for over twenty years; and had worked from approximately 1975 to 1981 as an accountant and accounting supervisor at Henderson State University.

Neither Bankhead nor Ballard have CPA licenses,[4] and neither have served as a Chief Financial Officer. Bankhead's employment application shows that he has a degree in industrial education. Ballard, like Holmstrom, has a BSBA with an emphasis in accounting. Ballard supervised from 16 to 23 state employees between 1988 and 2001.[5] Bankhead supervised about 15 employees with the Department of Youth Services from 1978 to 1986 and supervised from 17 to 35 employees with DHS from 1986 to 2001.[6] Ballard has worked in the areas of finance and tax for approximately thirty-one years, and Bankhead has approximately twenty-nine years of such experience. Ballard has over thirteen years experience in state accounting, and Bankhead has over sixteen years in state accounting.[7]

Following the application process, the applicants were scored according to DHS procedure.[8] Ballard received a 237, Bankhead received a 300, and Holmstrom received a 424.[9] Ultimately, Holmstrom was selected for, and accepted, the Grade 24 Business Manager position.[10]

Ballard filed a second EEOC charge on November 5, 2001, in which he checked boxes claiming that he was discriminated against based on his race and sex in not receiving the promotion to the Grade 24 position during August 2001. Ballard did not allege retaliation or sex discrimination in the body of his second EEOC charge. Bankhead filed a second EEOC charge on October 22, 2001, alleging that he was discriminated against on September 21, 2001, based on his race and age. Bankhead did not allege retaliation or sex discrimination in the body of his second EEOC charge. Both Plaintiffs are still employed by DHS in Grade 22 positions.

On December 19, 2001, Plaintiffs filed their Complaint in this Court, alleging that Defendants' decision to select Linda Holmstrom, and not to select Plaintiffs for the Grade 24 position, was based on Plaintiffs' race. They claim that Williams and Knickrhem condoned the actions of McCook, subjecting Plaintiffs to deprivation of their First Amendment rights. They further allege retaliation and Fourteenth Amendment violations by Defendants. Plaintiffs base their claims on Title VII, 42 U.S.C. § 1981, § 1983, and § 1985(3) and request injunctive relief, actual and consequential damages, compensatory damages, and punitive damages. Defendants request summary judgment on

---

4. Plaintiffs point out that there was an employee in the payroll section of DHS who had a CPA license but was not considered for the position.

5. Doc. No. 23, Exhibit G.

6. Doc. No. 23, Exhibit J.

7. Doc. No. 23, Exhibits G and J.

8. See Doc. No. 18, Exhibit H.

9. See Doc. No. 18, Exhibit L.

10. Defendants contend that they selected Linda Holmstrom for the position because she received the highest grade, based on her application, qualifications and experience, and interviews. Doc. No. 20. Plaintiffs claim, however, that Defendants had planned to preselect Linda Holmstrom by hiring her in the unclassified position and transferring her to the Grade 24 position without competition. Doc. No. 25 (citing Exhibit B at 13–20).

all causes of action asserted in the Complaint.

## Standard

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[11] The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[12]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[13] Nevertheless, summary judgment is important for promoting judicial economy by preventing trial when no genuine issue of fact remains.[14] This court must view the facts in the light most favorable to the party opposing the motion.[15]

The Eighth Circuit has set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.,* "[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[16]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[17]

Courts must use caution in granting summary judgment in discrimination cases, where inferences are often the basis of the claim, because "summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." [18]

## Discussion

### I. Title VII Claims Resulting From First EEOC Charges

■ Defendants claim that, because Plaintiffs failed to timely file a lawsuit after their initial EEOC charges, this Court lacks subject-matter jurisdiction over the allegations made by Plaintiffs in

---

11. *Holloway v. Lockhart,* 813 F.2d 874 (8th Cir.1987); FED. R. CIV. P. 56.

12. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

13. *Inland Oil & Transport Co. v. United States,* 600 F.2d 725, 727 (8th Cir.1979).

14. *Id.* at 728.

15. *Id.* at 727–28.

16. *Counts v. M.K.-Ferguson Co.,* 862 F.2d 1338, 1339 (8th Cir.1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.,* 838 F.2d 268, 273–274 (8th Cir.1988) (citations omitted)).

17. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

18. *Lynn v. Deaconess Medical Center–West Campus,* 160 F.3d 484, 486–87 (8th Cir.1998). *See also Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994).

their April 2001 EEOC charges. Additionally, Defendants claim that this Court lacks jurisdiction over Plaintiffs' retaliation claims because claims for retaliation were included in their first EEOC charges but did not appear in their second EEOC charges.

Plaintiff Ballard's April 2001 EEOC charge stated that he believed he was discriminated against when he was denied the opportunity to apply for the Grade 99 position of Mental Health Assistant Deputy Director, Administrative Services, in February 2001. Ballard also asserted that he was retaliated against as recently as March 2001 following the filing of a written grievance.[19] Plaintiff Bankhead's April 2001 EEOC charge stated that, beginning in January 2001, he was subjected to harassment by the Chief Fiscal Officer in that he was held accountable for mistakes that were the responsibility of other departments and that his work was scrutinized. The charge also stated that Bankhead's section was more closely scrutinized after he made complaints regarding treatment based on race. Additionally, Bankhead's charge asserted that he was denied consideration for a newly-created position and that a white female with several years less experience was selected for the position.[20]

Ballard received a right to sue letter from the EEOC on April 17, 2001. Bankhead received his right to sue letter on April 10, 2001. Both right to sue letters clearly stated that Plaintiffs had 90 days to file a lawsuit based on the allegations in the charge or their right to sue would be lost.[21] Plaintiffs did not file suit in this Court until December 19, 2001, more than one hundred and fifty days after each of their 90-day deadlines had passed. Defendants assert that Plaintiffs are barred from asserting any claims of discrimination or retaliation based on events that occurred before April 2001, including the hiring of Linda Holmstrom into the Grade 99 position.

An employee filing a Title VII claim in federal court must first exhaust available administrative remedies. This "provides the EEOC the first opportunity to investigate discriminatory practices and enables it to perform its roles of obtaining voluntary compliance and promoting conciliatory efforts."[22] In order to exhaust available administrative remedies, an individual must timely file a charge of discrimination with the EEOC setting forth the facts and nature of the charge and receive notice of the right to sue.[23] An employee who receives a right to sue letter from the EEOC has 90 days in which to file suit.[24] Though the issue is not one of subject-matter jurisdiction, as Defendants suggest,[25] the Eighth Circuit has held that a plaintiff is barred from asserting claims based on events which formed the basis of a previous EEOC charge that was not timely sued upon, even where the plaintiff timely files a second EEOC charge.[26]

19. Doc. No. 18, Exhibit C.

20. Doc. No. 18, Exhibit E.

21. Doc. No. 18, Exhibits D and F. *See* 42 U.S.C. § 2000e–5(f)(1).

22. *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 222 (8th Cir.1994) (citation omitted).

23. 42 U.S.C. § 2000e–5(b), (c), and (e).

24. *Spears v. Missouri Dept. of Corrections and Human Resources*, 210 F.3d 850, 853 (8th Cir.2000).

25. The Supreme Court has ruled that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to a Title VII suit in federal court. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Rather, the 90–day filing requirement is treated as a statute of limitations.

26. *Williams*, 21 F.3d at 222.

In the present case, it is undisputed that neither Plaintiff filed suit within 90 days of receiving their right to sue letters on the April 2001 EEOC charges. For that reason, claims under Title VII based upon the events forming the basis for those charges are barred by statute of limitation. Defendants' summary-judgment motion is GRANTED in this respect. However, the statute of limitation does not bar Plaintiffs from bringing a cause of action on those same events under 42 U.S.C. §§ 1981, 1983, and 1985.

Defendants also assert that this Court lacks subject-matter jurisdiction to hear Plaintiffs' retaliation claims. Defendants point out that both Plaintiffs failed to raise any allegations of retaliation in their second EEOC charges, filed in October and November of 2001, and assert that Plaintiffs have failed to exhaust all administrative remedies by not filing charges of retaliation with the EEOC within 180 days of the alleged unlawful discrimination. Plaintiffs acknowledge that they both failed to raise the issue of retaliation in their second EEOC charges and, therefore, are barred from recovering for retaliation under Title VII. Again, this bar is in the nature of a statute of limitation and is not a jurisdictional bar.

## II. Sufficiency of Allegations Against Each Separate Defendant

■ Defendants cite case law stating that complaints seeking damages against government officials are subject to a "heightened standard of pleading with sufficient specificity to put defendants on notice of the nature of the claim,"[27] and should state specifically how each defendant violated the plaintiff's rights.[28] Defendants assert that they are entitled to summary judgment and that Plaintiffs' claims should be dismissed because Plaintiffs have failed to make specific allegations against each separate Defendant. They claim Plaintiffs' allegations are conclusory and without sufficient factual support. Plaintiffs, on the other hand, argue that their Complaint is sufficient under Federal Rule of Civil Procedure 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.

The essential function of a complaint is to give opposing parties fair notice of the nature and basis for a claim, as well as a general indication of the type of litigation involved.[29] The facts alleged in the complaint must be reviewed in order to determine whether the plaintiffs provided the necessary notice and stated a claim in the manner contemplated by the federal rules.[30] A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief.[31] The Eighth Circuit cases cited by Defendants indicate that government defendants should receive adequate notice of specifically how each defendant is alleged to have violated Plaintiffs' rights.

27. *Edgington v. Missouri Dept. of Corrections*, 52 F.3d 777, 779 (8th Cir.1995) (citing *Brown v. Frey*, 889 F.2d 159, 170 (8th Cir.1989) (holding that damage actions against government officials are subject to a heightened standard of pleading with sufficient precision to put defendants on notice of the nature of the claims and enable them to prepare a response and appropriate motion for summary judgment on qualified immunity grounds)).

28. *Id.* at 780. *See also Tatum v. Iowa*, 822 F.2d 808 (8th Cir.1987).

29. *See Parkhill v. Minnesota Mut. Life Ins. Co.*, 286 F.3d 1051, 1057 (8th Cir.2002) (citations omitted).

30. *Id.* at 1058.

31. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

Among other things, Plaintiffs have specifically alleged in their Complaint:

(1) that McCook began a systematic program of harassment and intimidation against Plaintiffs that was designed to undermine Plaintiffs' authority and create a hostile work environment;

(2) that McCook, Williams, and Knickrhem received a formal complaint of the unfair and harassing treatment;

(3) that, in a January 3, 2001 meeting, McCook, Williams, and Knickrhem attempted to blame Bankhead solely for a problem concerning the checking of allotment balances before submitting payroll vouchers; and that other responsible parties were inexplicably absent from the meeting;

(4) that, in February 2001, McCook and Williams devised a scheme to circumvent the competitive hiring process required by the State in order to hire a white, female friend into the OFM; and that McCook hired Holmstrom into a Grade 99 position with the intent of transferring her to a Grade 24 position, thereby circumventing state government advertising and competition requirements; and that Williams advised McCook in this scheme;

(5) that an April 2001 Employee Relations investigation found that McCook had plans to place Holmstrom in a Grade 24 position without competition; and that Williams and Knickrhem took no action after receiving the results of that investigation;

(6) that, after Plaintiffs filed their April 2001 EEOC charges, the harassment and disparate treatment by McCook intensified; and that Plaintiffs were treated differently than similarly-situated white managers;

(7) that McCook, Williams, and Knickrhem intentionally failed and refused to consider or hire Plaintiffs into the position of DHS Business Manager because of their race and instead hired a substantially less-qualified, white female;

(8) that, after Plaintiffs filed their formal complaint with Knickrhem in February 2001, McCook intensified harassment of Plaintiffs, undermining and belittling them publicly and privately and subjecting them to increasingly adverse terms and conditions of employment to punish them for exercising their rights to free speech in violation of the First Amendment;

(9) that, after McCook's acts of retaliation, Plaintiffs complained to both Williams and Knickrhem, who took no action but acquiesced in and condoned the actions of McCook, such that all three Defendants subjected Plaintiffs to deprivation of their First Amendment rights;

(10) that McCook's intentional race discrimination and retaliation, as well as Williams' and Knickrhem's failure to protect Plaintiffs, constitute state action in violation of Plaintiffs' Fourteenth Amendment rights to equal protection and 42 U.S.C. § 1983;

(11) that McCook and Williams conspired to deprive Plaintiffs of their right to equal protection and equal privileges and immunities in violation of 42 U.S.C. § 1985.

Considering all the above, I find that Plaintiffs have pled sufficiently to give the separate Defendants fair notice of the nature and basis for their claims, as well as an indication of how they claim each Defendant specifically violated their rights. Defendants' request that I dismiss Plaintiffs' claims and grant them summary-

judgment on this basis is, therefore, DE-NIED.

## III. Evidence of Race Discrimination, Failure to Promote, Retaliation, and Hostile Work Environment

### A. Title VII

Plaintiffs have alleged they were discriminated against on the basis of their race in violation of Title VII based on the facts alleged in their second EEOC charges regarding the failure of DHS to promote either of them to the Grade 24 position.

The production of evidence in a Title VII employment discrimination case is governed by the three-stage, burden-shifting standard of *McDonnell Douglas Corp. v. Green*.[32] Under the *McDonnell Douglas* test, the employee must first establish a prima facie case of discrimination.[33] Once this has been established, the burden shifts to the employer to produce evidence that the adverse employment actions were taken for a legitimate, nondiscriminatory reason.[34] If the employer carries this burden of production, the presumption raised by the prima facie case is rebutted, and the burden shifts back to the employee, who must demonstrate that the proffered reason was not the true reason for the decision but was really a pretext for intentional discrimination.[35] With the *McDon-*

*nell Douglas* test, at all times, the burden of persuasion remains on the employee claiming discrimination.[36]

1. *Whether Separate Defendants Knickrhem, Williams, and McCook, in Their Individual and Official Capacities, Are "Employers" Under Title VII*

■ Defendants argue that Separate Defendants Knickrhem, Williams, and McCook cannot be liable under Title VII because they are not "employers." Title VII prohibits unlawful employment action on the part of "employers."[37] The term employer, as used in 42 U.S.C. § 2000e, means "a person engaged in an industry affecting commerce ... and any agent of such person ...."[38] In *Lenhardt v. Basic Institute of Technology, Inc.*,[39] the Eighth Circuit left open the question whether an individual employee could be liable under Title VII when the employee was the Title VII plaintiff's supervisor. This question was answered in *Spencer v. Ripley County State Bank*,[40] where the Court held that supervisors may not be found individually liable under Title VII.[41] Therefore, Defendants' summary-judgment motion on Plaintiffs' Title VII claims against Defendants Knickrhem, Williams, and McCook is 'GRANTED and those claims are dismissed.[42]

---

**32.** 411 U.S. 792, 800–806, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

**33.** Such a prima facie case requires the showing of four elements which are set forth in *Krenik v. County of Le Sueur*, 47 F.3d 953, 957–58 (8th Cir.1995).

**34.** *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

**35.** *Id.* at 507–08, 113 S.Ct. 2742.

**36.** *Id.*

**37.** 42 U.S.C. § 2000e–2(a).

**38.** 42 U.S.C. § 2000e.

**39.** 55 F.3d 377, 380 (8th Cir.1995).

**40.** 123 F.3d 690, 691 (8th Cir.1997).

**41.** *See Bonomolo–Hagen v. Clay Central–Everly Community Sch. Dist.*, 121 F.3d 446, 447 (8th Cir.1997).

**42.** In their Brief in Support of Response to Defendants' Motion for Summary Judgment, Plaintiffs concede that Defendants Knickrhem, Williams, and McCook should not be held individually liable under Title VII. Doc. No. 24 at 9.

2. *Whether Plaintiffs Have Produced Sufficient Evidence That They Were Discriminated Against Based on Their Race*

■ Defendants next claim that DHS is entitled to summary judgment on Plaintiffs' Title VII claims because Plaintiffs have failed to produce evidence that they were discriminated against based on their race. Defendants admit that Plaintiffs have stated a prima facie case of discrimination in accord with the *McDonnell Douglas* standard.[43] Plaintiffs admit that Defendants have sufficiently rebutted the presumption by stating that their decision to hire Linda Holmstrom was based on the nondiscriminatory fact that she was more qualified than Plaintiffs.[44] Plaintiffs have the final burden of showing that the Defendants' selection of Holmstrom over Plaintiffs for the Grade 24 position was based on Plaintiffs' race.

Defendants state that Holmstrom was hired into the Grade 24 position because she was more qualified than either of the Plaintiffs. They assert six reasons why she was more qualified: (1) Holmstrom received the highest graded score based upon her interview and application for employment; (2) Holmstrom had both an accounting degree and a CPA license; (3) Holmstrom had previously been employed as a Chief Financial Officer for over five years for various independent companies; (4) Holmstrom had previous experience in managerial positions; (5) Holmstrom had worked in the areas of finance and tax for approximately twenty years; and (6) Holmstrom had over six years of experience as a state employee in the area of accounting.

Plaintiffs claim that Defendants' proffered nondiscriminatory reason for hiring Holmstrom was not the true reason for the employment decision. Plaintiffs take the position that the facts articulated by Defendants as proof that Holmstrom was more qualified for the Grade 24 position are not true, and are being used as a pretext to justify Defendants' discriminatory acts.

(1) Plaintiffs dispute the allegation that Holmstrom received the highest graded score based upon her interview and application for employment. They claim that the interview was set up as a sham to make it appear that McCook was following proper procedure when, in fact, it was his plan to place Holmstrom into the Grade 24 Business Manager position without any competition. Plaintiffs have produced findings from an investigation conducted by the DHS Office of Employee Relations indicating that McCook initially placed Holmstrom in the Grade 99 position with the intent of quickly transferring her to a Grade 24 position without competition.[45] There is also evidence that McCook prepared Holmstrom to move into the Grade 24 position by assigning her to full-time AASIS training after hiring her when all other employees assigned to AASIS training had several years of experience with DHS or state government.[46] Additionally, Plaintiffs cite a Justification for Hiring attached to a Hiring Freeze Request as evidence that McCook and Williams were involved in a scam to select Holmstrom to fill the Grade 24 position. Defendants justified their request to un-freeze hiring for the Grade 24 General Business Manager position by stating: "It is needed now because the office is attempting to attract an individual who can help ensure conversion to AASIS .... There is not currently an individual on board with the expertise to do this who has the time to do it."[47]

43. Doc. No. 19 at 17.

44. Doc. No. 24 at 11.

45. Doc. No. 23, Exhibit B at 19, 16–17.

46. Doc. No. 23, Exhibit B at 17, 19.

47. Doc. No. 23, Exhibit D.

(2) Plaintiffs contest the assertion that Holmstrom was more qualified for the position because she had a degree in accounting and a CPA license. Initially, Plaintiffs point out that the job description posted for General Business Manager did not require that the applicant be licensed as a CPA[48] and that there is evidence showing that McCook knew of Richard Brittain, another employee in payroll who had a CPA license.[49] Also, Holmstrom's resume shows that she had a BSBA with a concentration in accounting.[50] This is the same degree acquired by Plaintiff Ballard.[51]

(3) Plaintiffs dispute Holmstrom's qualifications as a Chief Financial Officer. They argue that the term Chief Financial Officer does not have any meaning without a determination of exactly what responsibilities Holmstrom had at each particular company. In Holmstrom's deposition, she stated that she supervised from zero to seven employees in each position she held from 1975 to 2001.[52] Plaintiffs claim that her record does not equal the position of Chief Financial Officer as it is used in state government.

(4) Plaintiffs contest the extent of Holmstrom's previous experience in managerial positions. They claim that Holmstrom never supervised more than seven employees at any time during her thirty-five year career and claim that they possess more managerial experience. Ballard supervised 16 state employees as an Accounting Supervisor II at DHS from 1988 to 1995 and supervised 23 employees as Financial Section Manager at DHS from 1995 to present.[53] Bankhead supervised about 14 employees as Agency Financial Manager with the Department of Youth Services from 1978 to 1981, supervised about 15 employees as Deputy Commissioner for Youth Services from 1981 to 1986, supervised 35 employees as DHS Accounts Payable Manager from 1986 to 1989, and supervised 17 employees as Manager of DHS Payroll from 1995 to present.[54]

(5) Plaintiffs claim they both have more experience in the area of finance and tax than Holmstrom. Holmstrom's resume shows approximately twenty-six years of such experience. Ballard's resume shows approximately thirty-one years experience in finance and tax, and Bankhead's resume shows approximately twenty-nine years of finance and tax experience.

(6) Finally, Plaintiffs assert that they have more state experience in accounting than Holmstrom. Holmstrom had over six years of experience as a state employee in the area of accounting; however, as Plaintiffs point out, Holmstrom's experience took place from 1975 to 1981. In comparison, Ballard has over thirteen years experience in state accounting, and Bankhead has over sixteen years in state accounting.[55] Plaintiffs' experiences are more recent, having occurred between 1986 and the present.

In light of all the above issues raised by Plaintiffs, I find that there is a question of material fact as to whether Defendants' proffered reason for hiring Holmstrom into the Grade 24 position was the true reason for hiring or was a pretext for discrimination. Defendants' request for summary judgment on Plaintiffs' Title VII discrimination claim against DHS is DENIED.

**48.** Doc. No. 18, Exhibit G.

**49.** Doc. No. 23, Exhibit F.

**50.** Doc. No. 18, Exhibit I.

**51.** Doc. No. 23, Exhibit G.

**52.** Doc. No. 23, Exhibit H at 12–22.

**53.** Doc. No. 23, Exhibit G.

**54.** Doc. No. 23, Exhibit J.

**55.** Doc. No. 23, Exhibits G and J.

## B. Failure to Promote

Defendants claim they are entitled to summary-judgment on Plaintiffs' claims of failure to promote. Plaintiffs have not addressed this argument in their brief.

Title VII makes it an unlawful employment practice for an employer to fail or refuse to hire an individual because of his race.[56] To establish a prima facie case for failure to promote, Plaintiffs are required to show four elements: (1) they belonged to a protected class; (2) they met the minimum qualifications and applied for the position; (3) despite their qualifications they were denied the position; and (4) their employer promoted a person of similar qualifications who was not a member of the protected group.[57] Once Plaintiffs have made a prima facie case, the burden shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the adverse employment action.[58] If Defendants do so, Plaintiffs are then required to prove by a preponderance of the evidence that Defendants' proffered reason is merely a pretext for discrimination.[59]

My analysis of this claim is the same as my analysis above on Title VII discrimination. Plaintiffs have set forth a prima facie case, and DHS has offered the non-discriminatory reason that it failed to promote Plaintiffs because Holmstrom was more qualified than Plaintiffs for the Grade 24 position. Plaintiffs claim that this reason is a pretext for discrimination, citing facts to indicate that Holmstrom was not more qualified than Plaintiffs. As stated above, I find that there is a question of fact as to whether DHS's proffered reason for hiring Holmstrom was the true reason or a pretext for discrimination. Defendants' request for summary judgment on any claim of failure to promote is DENIED.

## C. Retaliation

■ Defendants' next claim is that they are entitled to summary judgment on the issue of retaliation because Plaintiffs have failed to provide any evidence of retaliation. As discussed previously, Plaintiffs are permitted to assert retaliation under 42 U.S.C. § 1983 but not under Title VII.

An employer may not discriminate against an employee "because he has opposed any practice made an unlawful employment practice ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing ...."[60] In order to establish a prima facie case of retaliation, a plaintiff must show that (1) he filed a charge of discrimination; (2) the defendant took adverse action against him; and (3) the adverse action was linked to the filing of the discrimination charge.[61] Stated another way, a plaintiff must show that he engaged in protected conduct, that he suffered an adverse employment action, and that the adverse action was causally linked to the protected conduct.[62]

Defendants assert that the only action that could be considered adverse employment action against Plaintiffs in this case is the fact that neither Plaintiff was selected for the Grade 24 position. Defendants argue that Plaintiffs have presented no evidence to show any link between the lack

**56.** See 42 U.S.C. § 2000e–2(a).

**57.** McCullough v. Real Foods, Inc., 140 F.3d 1123, 1126 (8th Cir.1998).

**58.** See Marzec v. Marsh, 990 F.2d 393, 395 (8th Cir.393).

**59.** Id.

**60.** 42 U.S.C. § 2000e–3(a).

**61.** Cronquist v. City of Minneapolis, 237 F.3d 920, 929 (8th Cir.2001).

**62.** Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1136 (8th Cir.1999).

of selection and either (1) Plaintiffs' internal complaints to Defendants Knickrhem and Williams, or (2) Plaintiffs' EEOC complaints.

Following Plaintiffs' formal complaint to Knickrhem in February 2001 concerning the hiring of Holmstrom, McCook's selective use of the hiring policy, and the fact that they had not been afforded an opportunity to apply for the Grade 99 position, Plaintiffs filed EEOC charges in April 2001. Plaintiffs claim that "[s]oon after [they] filed their EEOC Complaints, the harassment and disparate treatment by Defendant McCook intensified. Plaintiffs' work was scrutinized unfairly and Defendant McCook, with the approval of Defendant Williams, attempted to have Plaintiff Bankhead terminated. He also made threats to terminate Plaintiff Ballard." [63]

Considering the facts in the light most favorable to Plaintiffs as I must, I find that Plaintiffs have alleged harassment and disparate treatment in the work environment as adverse employment action resulting from their complaints of discrimination. Plaintiffs claim that the adverse actions began temporally close to the time when they filed EEOC complaints. On this basis, I find there is a question of fact as to whether Plaintiffs were retaliated against; therefore, Defendants' request for summary judgment on Plaintiffs' retaliation claims is DENIED.

### D. Hostile Work Environment

■ In paragraph 20 of their Complaint, Plaintiffs allege claims for hostile work environment harassment. Defendants argue they are entitled to summary judgment on any hostile work environment claims because Plaintiffs have not met the requirements for showing a hostile work environment.[64] Plaintiffs have not responded to this summary-judgment request—this is puzzling.

Hostile work environment harassment occurs when "the workplace is permeated with discriminatory intimidation, ridicule, and insult ... that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." [65] To establish a prima facie case, Plaintiffs must show that (1) they belonged to a protected group; (2) they were subjected to unwelcome harassment; (3) the harassment was based upon race; (4) the harassment affected a term, condition, or privilege of their employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action.[66] In order to prove a racially hostile work environment, in addition to proving they were subjectively affected by racially discriminatory behavior, Plaintiffs must prove that the conduct they are complaining of was "sufficiently severe or pervasive as to create an objectively hostile work environment that altered the terms, conditions, or privileges of employment." [67] In considering whether Plaintiffs have presented evidence of an objectively hostile work environment, the district court must consider all circumstances, including the frequency of discriminatory conduct, the severity of

---

63. Doc. No. 24 at 16.

64. Though not argued by Defendants, it should be noted that neither Plaintiff presented a hostile work environment claim to the EEOC under Title VII; thus, any claims of hostile work environment can only be brought under § 1983.

65. *Jacob–Mua v. Veneman*, 289 F.3d 517, 522 (8th Cir.2002) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)).

66. *Ross v. Douglas County, Nebraska*, 234 F.3d 391, 395 (8th Cir.2000).

67. *Willis v. Henderson*, 262 F.3d 801, 808 (8th Cir.2001).

such conduct, whether the conduct was physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interfered with the employees' work performance.[68]

In their Complaint, Plaintiffs make only the vague allegation that they were subjected to harassment and intimidation by Defendant McCook which undermined their authority. They offer no more detail. Plaintiffs clearly belong to a protected group and assert that they were subjected to unwelcome harassment based upon race. However, a claim for hostile work environment requires morePlaintiffs must show that the conduct complained of was sufficiently severe or pervasive to create an objectively hostile work environment, altering the terms, conditions, or privileges of employment. On the record before me, Plaintiffs claim that they were treated differently than similarly-situated white managers, that their authority was undermined, that their work was closely scrutinized, and that they were threatened with termination. Though such behavior is wrongful, it does not rise to the level of a hostile work environment. Plaintiffs have not shown behavior so severe and frequent that it unreasonably interfered with their work performance. Thus, as Plaintiffs have failed to present any evidence that they were subjected to any discrimination or intimidation which was sufficiently severe or pervasive to create an abusive working environment, Defendants' request for summary-judgment on Plaintiffs' hostile work environment claim is GRANTED.

## IV. Claims Brought Under 42 U.S.C. § 1981

Defendants assert that 42 U.S.C. § 1981 does not provide Plaintiffs with an independent cause of action, arguing that Plaintiffs' § 1981 claim must fail. Defendants cite *Jett v. Dallas Independent School District*,[69] in which the Supreme Court held that "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."[70]

Section 101 of the Civil Rights Act of 1991 added the following language at 42 U.S.C. § 1981(c): "The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." Courts have sharply divided as to whether this 1991 amendment supercedes *Jett*'s holding that § 1983 provides the exclusive federal remedy against state actors. Some courts have interpreted the new subsection to allow direct causes of action against state actors under § 1981, doing away with *Jett's* requirement that claimants sue state actors under § 1983 for violations of § 1981.[71] For example, in *Federation of African American Contractors v. City of Oakland*,[72] the Ninth Circuit concluded that the 1991 amendment contains an implied cause of action against state actors, "thereby overturning *Jett*'s holding that 42 U.S.C. § 1983 provides the exclusive federal remedy against state actors for the violation of rights under 42 U.S.C. § 1981."[73]

68. *Id.* at 809 (citations omitted).

69. 491 U.S. 701, 732–34, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

70. *Id.* at 733, 109 S.Ct. 2702. *See also Williams*, 21 F.3d at 224 (holding that 42 U.S.C. § 1983 provides the exclusive federal damage remedy for violations of the rights guaranteed by § 1981 when the claim is against a state actor).

71. A list of cases and commentary on the dispute are gathered in *Federation of African American Contractors v. City of Oakland*, 96 F.3d 1204 (9th Cir.1996).

72. 96 F.3d 1204 (9th Cir.1996).

73. *Id.* at 1214.

However, other courts have reached the opposite conclusion. The Fourth Circuit, in *Dennis v. County of Fairfax*,[74] found that the 1991 amendment does not affect the holdings of *Jett*, but merely codifies the holding of another Supreme Court decision, *Runyon v. McCrary*,[75] which said that § 1981 protects against discrimination by private actors as well as state actors. In *Butts v. County of Volusia*, the Eleventh Circuit agreed with *Dennis*, saying:

> Nothing in the 1991 amendment to § 1981 evinces Congress' desire to alter the Supreme Court's conclusion in *Jett*. The express language of subsection (c) states that § 1981 protects against racial discrimination by private and state actors. Put another way, § 1981(c) makes clear that the section creates a right that private or state actors may violate but does not itself create a remedy for that violation.[76]

The Eighth Circuit has followed *Jett* as recently as January of this year in *Lockridge v. Board of Trustees of University of Arkansas*.[77] In *Lockridge*, the plaintiff brought race and sex discrimination claims under Title VII, § 1981, and § 1983 based on the denial of equal protection. Though clearly stating that a § 1981 claim against a state actor must be brought under § 1983, the Court liberally construed the plaintiff's complaint "as including claims for violations of ... § 1981 brought under § 1983."[78]

■ Following the lead of *Lockridge*, I liberally construe Plaintiffs' Complaint as if they had asserted their § 1981 cause of action under § 1983. As set forth more thoroughly below in my discussion of § 1983, a state is not a "person" within the meaning of § 1983,[79] and a § 1981 claim brought under § 1983 cannot be brought against DHS. A § 1983 lawsuit brought against a state official in his "official" capacity is no different from a suit against the state itself.[80] However, state officials are not entitled to sovereign immunity when injunctive relief is sought.[81]

Plaintiffs may seek damages under § 1981 through § 1983 against the state officials in their personal capacities.[82] Although the *McDonnell Douglas* test arose in the context of Title VII, the Eighth Circuit has applied its burden-shifting analysis to employment discrimination claims under § 1981.[83] I previously found, under the *McDonnell Douglas* test, that (1) Plaintiffs have stated a prima facie case of discrimination; (2) Defendants have sufficiently rebutted the presumption by asserting that their decision to hire Linda Holmstrom was based on the nondiscriminatory fact that she was more qualified than Plaintiffs; and (3) there is a question

---

74. 55 F.3d 151, 156 n. 1 (4th Cir.1995).

75. 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976).

76. 222 F.3d 891, 894 (11th Cir.2000).

77. 315 F.3d 1005, 1007 (8th Cir.2003) (citing *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1181 (8th Cir.1998)).

78. *Id.* at 1007.

79. *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 64–68, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

80. *Id.* at 71, 109 S.Ct. 2304 (citations omitted).

81. *Id.* at 71, n. 10, 109 S.Ct. 2304 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167, n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

82. *See Egerdahl v. Hibbing Comm. College*, 72 F.3d 615, 619 (8th Cir.1995).

83. *Roxas v. Presentation College*, 90 F.3d 310, 315–17 (8th Cir.1996).

of material fact as to whether the Defendants' proffered reason for hiring Holmstrom was a pretext for racial discrimination.

Defendants' summary-judgment motion is GRANTED with respect to § 1981 claims for monetary damages against DHS and the individual Defendants in their official capacities. The summary-judgment motion is DENIED with respect to § 1981 claims against the individual Defendants in their personal capacities.

## V. Violation of First Amendment Rights Under 42 U.S.C. § 1983

Defendants assert they are entitled to summary judgment because Plaintiffs have produced no evidence that their First Amendment rights were violated under 42 U.S.C. § 1983. Under § 1983, an action can be brought against a person who, under color of state law or custom, deprives a plaintiff of his or her rights under the Constitution and laws.

To establish a § 1983 claim of unlawful First Amendment retaliation, a public employee must prove that: (1) he spoke out on a matter of public concern; (2) the employee's interest in expressing himself on this matter is not outweighed by any injury the speech could cause to the government's interest; and (3) his protected speech was a substantial factor motivating the adverse employment action.[84] When a public employee speaks on matters only of personal interest, absent most unusual circumstances, a federal court is not the appropriate forum to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.[85] Government officials should enjoy wide latitude in managing their offices without judicial intrusion; however, judicial intrusion may be warranted when employee expression relates to matters of political, social, or other concern to the community.[86] "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."[87] The form and context must be examined to determine whether the employee is acting as a concerned citizen informing the public that its government is improperly discharging its duties or, rather, as an employee speaking about internal practices relevant only to other employees.[88]

Plaintiffs engaged in free speech on February 20, 2001,[89] by filing a joint complaint regarding the hiring of Linda Holmstrom into a Grade 99 position with the OFM. Specifically, Plaintiffs demonstrated concern about Defendant McCook's selective use of the hiring policy and alleged racial discrimination in the promotion practices used by McCook and Williams. They further complained that McCook "has a problem with African–American managers supervising payroll functions"[90]

---

84. *See Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Educ. of Township H.S. Dist. 205*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

85. *Connick*, 461 U.S. at 147, 103 S.Ct. 1684.

86. *Id.* at 146, 103 S.Ct. 1684.

87. *Id.* at 147–48, 103 S.Ct. 1684.

88. *Calvit v. Minneapolis Public Schools*, 122 F.3d 1112, 1117 (8th Cir.1997).

89. Plaintiffs also filed a complaint at DHS alleging retaliation. The DHS Office of Employee Relations conducted an investigation and found that Plaintiffs could not state a prima facie case of retaliation because Plaintiffs did not have "any knowledge that Mr. McCook had knowledge of the complaint" at the time of the alleged retaliatory activities. Doc. No. 18, Exhibit B.

90. Doc. No. 23, Exhibit L at 2.

and stated that Holmstrom, a personal friend of McCook's, was placed in a higher-graded position than managers within the OFM who were not allowed to apply for the position. Under similar circumstances, the Eighth Circuit held that the adverse impact which the promotion practices of a sheriff's department could have on its operations made such practices a matter of public concern.[91] I find that case to be analogous to this one.

In addition to complaining about hiring and promotion practices at DHS, Plaintiffs expressed concern that, though Holmstrom had limited state government experience, she was assigned to work full time in the payroll area of the new state accounting system ("AASIS"). Because OFM managers conducted normal duties in addition to implementing AASIS for their departments, Plaintiffs complained that it was a gross misuse of state funds for DHS to allow the creation of a full-time, Grade 99 position to work the payroll aspect of AASIS. Similarly, they protested that the position created a layer of management that was unnecessary and could not be justified. I find that Plaintiffs' speech was presented in the nature of a concerned citizen challenging government conduct.

In determining whether the speech was on a matter of public concern, I must also consider the context in which the speech occurred. The Supreme Court has held that a public employee does not give up his right to First Amendment protection when he arranges to communicate privately with his employer rather than to express his views publicly.[92] However, the internal nature of a statement is a factor that must be considered in determining whether the employee is speaking on matters of public concern.[93] In this case, Plaintiffs' complaint was made internally, but it was not solely internal. Though the complaint was addressed to Defendant Knickrhem, a copy of it was forwarded to Brenda Turner in the Governor's office.[94] I find that this demonstrates Plaintiffs' intentions to bring their concerns to the public eye. Considering all the above, I find that the content, form, and context of Plaintiffs' speech show that the speech addressed matters of public concern.

This case is distinguishable from *Sparr v. Ward*,[95] in which the Eighth Circuit found that an internal memorandum from an employee of the Pulaski County Assessor's office was not on a matter of public concern. In *Sparr*, the memorandum was addressed only to the incumbent county assessor and the deputy assessor, both of whom were running for the office of assessor, with a carbon copy for placement in the employee's personnel file. The Court found that the memorandum contained mostly personal comments, driven by the employee's self-interest in protecting her job in the event that the deputy won the election, which one would not expect to find in speech intended to expose a breach of public trust.

The next inquiry must be whether Plaintiffs' interest in expressing themselves on this matter is outweighed by any injury the speech could cause to the government's interest. Defendants have not alleged that Plaintiffs' speech was in danger of causing any injury to the government's interest.

The final question is whether the protected speech was a substantial factor motivating the adverse employment action

---

**91.** *Powell v. Basham,* 921 F.2d 165, 167 (8th Cir.1990).

**92.** *Givhan v. Western Line Consolidated School Dist.,* 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

**93.** *Buazard,* 172 F.3d at 549.

**94.** Doc. No. 23, Exhibit L.

**95.** 306 F.3d 589 (8th Cir.2002).

against Plaintiffs. Plaintiffs have alleged that the adverse employment action against them came close in time to the filing of their complaints. The mere fact that protected speech precedes an adverse employment decision does not create an absolute inference that the speech motivated the employment decision; however, on the facts before me, I find that the temporal link between the speech and employment action is sufficient to create a question of material fact as to whether Plaintiffs can establish a § 1983 claim for First Amendment retaliation.[96]

Plaintiffs also claim they were retaliated against in violation of the First Amendment after they filed a number of FOI requests for information concerning the hiring of Holmstrom. I find that the free flow of public information is of substantial public concern. Again, Defendants have not alleged that Plaintiffs' requests caused any injury to the government's interest. Plaintiffs claim that McCook, Williams, and Knickrhem began a systematic program of harassment against them one week after they put in the FOI requests. As above, I find that the temporal link between the requests and the alleged harassment is sufficient to create a question of material fact as to whether Plaintiffs can establish a § 1983 claim for First Amendment retaliation.

A. *Sovereign Immunity of DHS and Employees in Their Official Capacities*

■ Defendants contend that DHS and Knickrhem, Williams, and McCook, all in their official capacities, are entitled to sovereign immunity on Plaintiffs' § 1983 First Amendment claim. This is not entirely true.

A state is not a "person" within the meaning of § 1983;[97] therefore, a § 1983 claim cannot be brought against a state agency. Accordingly, Plaintiffs cannot bring a § 1983 action against DHS. Also, a lawsuit brought against a state official in his "official" capacity is considered a suit against the official's office, and, therefore, is no different from a suit against the state itself.[98] However, there is an exception to immunity for state officials where injunctive relief is sought: "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official capacity actions for prospective relief are not treated as actions against the state.'"[99]

Plaintiffs in this case have requested injunctive relief against Defendants. They ask that Defendants be enjoined from discriminating against Plaintiffs with respect to their employment on the basis of race, engaging in other employment practices that discriminate on the basis of race, continuing to deprive Plaintiffs of their rights to equal protection of the laws and privileges and immunities under the laws, and conspiring to deprive Plaintiffs of any said rights. Thus, Plaintiffs may proceed against McCook, Williams, and Knickrhem in their official capacities on Plaintiffs' request for injunctive relief. Plaintiffs may not proceed against either DHS or the individual Defendants in their official capacities for monetary relief under § 1983.

**96.** *See Mathews v. Trilogy Comms., Inc.,* 143 F.3d 1160, 1166 (8th Cir.1998); *Barnard v. Jackson Co., Missouri,* 43 F.3d 1218, 1226 (8th Cir.1995).

**97.** *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 64–68, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

**98.** *Id.* at 71, 109 S.Ct. 2304 (citations omitted).

**99.** *Id.* at 71, n. 10, 109 S.Ct. 2304 (quoting *Kentucky v. Graham,* 473 U.S. 159, 167, n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)).

Defendants' summary-judgment request is GRANTED in this respect.

### B. Defendants in Their Individual Capacities

 Defendants assert that Knickrhem, Williams, and McCook, in their individual capacities, are entitled to summary judgment on Plaintiffs' First Amendment claims because Plaintiffs have failed to show any causal connection between their complaints and the decision to hire Holmstrom into the Grade 24 position. As set forth above, I find there is a question of material fact as to whether Plaintiffs can establish a § 1983 claim for First Amendment retaliation because there is a question as to whether Plaintiffs' protected speech was a substantial factor motivating the adverse employment action against Plaintiffs by Knickrhem, Williams, and McCook.

Defendants argue that Plaintiffs have failed to show any evidence that Defendants Williams or Knickrhem participated in harassment, the decision to hire Holmstrom, or other specific acts of retaliation. However, as set out above, Plaintiffs assert, in their court Complaint, that Williams advised McCook in a scheme to circumvent the competitive hiring process in order to hire Holmstrom, that Williams and Knickrhem took no action after receiving results of an internal investigation finding that McCook had plans to place Holmstrom without competition, and that neither Williams nor Knickrhem took any action after Plaintiffs complained to them about McCook's acts of retaliation against them. Some additional allegations are set forth in Plaintiffs' affidavits.[100] I find this evidence is sufficient to allow Plaintiffs to go forward.

Defendants' request for summary-judgment on the issue of a First Amendment violation brought under § 1983 is GRANTED in part and DENIED in part. Plaintiffs may go forward with their First Amendment claims against Knickrhem, Williams, and McCook in their individual capacities, but may not proceed against either DHS or the individual Defendants in their official capacities for monetary relief.

## VI. Violation of Fourteenth Amendment Equal Protection Under 42 U.S.C. § 1983

 In their Brief, Plaintiffs argue that they have a cause of action for equal protection violations against Defendants Knickrhem, Williams, and McCook in their individual capacities. Defendants, on the other hand, claim that summary judgment is proper because Plaintiffs have produced no evidence that their equal protection rights were violated under 42 U.S.C. § 1983.

"The Equal Protection Clause generally requires the government to treat similarly situated people alike."[101] Therefore, the initial step in an equal protection case must be to determine whether Plaintiffs have demonstrated that they were treated differently than others who were similarly situated for purposes of the challenged government action.[102] Plaintiffs claim that their equal protection rights were violated when Defendants McCook, Williams, and Knickrhem conspired and carried out a

---

**100.** Doc. No. 23, Exhibit N and Q.

**101.** *City of Cleburne v. Cleburne Living Ctr., Inc.,* 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).

**102.** *Klinger v. Department of Corrections,* 31 F.3d 727, 731 (8th Cir.1994).

plan to select a white female for the Grade 24 position. Based on a comparison of the Plaintiffs' qualifications for the Grade 24 position to Holmstrom's qualifications, set out in section III.A.2 above, and the fact that both Plaintiffs and Holmstrom submitted applications for the Grade 24 position, I find that both Plaintiffs and Holmstrom were similarly situated as applicants for the Grade 24 position.[103]

The *McDonnell Douglas* burden-shifting analysis that I applied in section III is also applicable to employment discrimination claims based on the equal protection clause.[104] Using that analysis, I find that Plaintiffs have set forth a prima facie case that Defendants violated their rights to equal protection when they hired Holmstrom for the Grade 24 position. Defendants have met their burden of setting forth a non-discriminatory reason for the hiring. Now, Plaintiffs have the burden of showing that Defendants' reason is nothing more than a pretext for activity which violated their rights to equal protection. Plaintiffs have shown evidence of a scheme to place Holmstrom by attempting to side-step the competitive hiring process and that Holmstrom was placed in a position for which they applied. I find this sufficient to show that a question of material fact exists regarding whether Plaintiffs were denied their equal rights to be considered for and promoted to the Grade 24

position. Defendants' summary-judgment request on the equal protection issue is DENIED.

## VII. Violation of 42 U.S.C. § 1985(3)

Defendants request summary judgment on Plaintiffs' claims under 42 U.S.C. § 1985(3), claiming there is no evidence to support the claim. The statute at issue reads, in relevant part:

> If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.[105]

Section § 1985(3) does not create substantive rights; rather, like § 1983, it merely provides a remedy for violation of rights designated by it.[106]

---

**103.** In their summary-judgment Brief, Defendants assert that Plaintiffs and Holmstrom are not similarly situated because Holmstrom was in a Grade 99 position when she applied for the Grade 24 position, unlike Plaintiffs who were both in Grade 22 positions. On the facts before me, I do not find that this fact is relevant.

In addition, here and in other sections of their Brief, Defendants argue that, because only one position was available, only one of the Plaintiffs could have been chosen if Holm-

strom was not chosen. Though this argument may have some place in the remedy phase of this case, it is not relevant to the decision I render today.

**104.** *Lockridge,* 315 F.3d at 1010.

**105.** 42 U.S.C. § 1985(3).

**106.** *Great American Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 372, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979).

■ In order to prove a civil rights conspiracy under § 1985(3), Plaintiffs must show: (1) that two or more Defendants conspired; (2) for the purpose of depriving, whether directly or indirectly, any person or class of persons of equal protection or the laws or equal privileges and immunities under the laws; and that (3) one or more of the conspirators did or caused any act in furtherance of the object of the conspiracy; (4) causing another person to suffer injury to his person or property or be deprived of having and exercising any right or privilege belonging to a U.S. citizen.[107] The "purpose" element of the conspiracy requires Plaintiffs to prove a class-based "invidiously discriminatory animus."[108] Plaintiffs must "allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement;" they can satisfy this burden by pointing to some facts that would suggest Defendants "reached an understanding to violate [their] rights."[109]

■ Even assuming that Plaintiffs in this case have asserted sufficient evidence of a conspiracy, Defendants cannot be found liable under § 1985(3). There is a bar to Plaintiffs' claims in this regard: the intracorporate conspiracy doctrine. Ac-

cording to the intracorporate conspiracy doctrine, a corporation cannot conspire with itself through its agents when the acts of the agents are within the scope of their employment.[110] The Eighth Circuit has found that the intracorporate conspiracy doctrine is available to governmental entities.[111]

As supervisory employees at DHS, McCook, Williams, and Knickrhem are all agents of DHS. According to the intracorporate conspiracy doctrine, they cannot be found liable under § 1985(3) unless they were acting outside the scope of their employment.[112] Plaintiffs have not alleged or set forth any facts to show that Defendants were acting outside the scope of their employment when the alleged violations of § 1985(3) occurred. In fact, all evidence presented by Plaintiffs refers to actions taken by Defendants within the scope of their employment with DHS. Therefore, Defendants' motion for summary judgment on § 1985(3) is GRANTED.

## VIII. Whether Individual Defendants, in their Individual Capacities, are Entitled to Qualified Immunity

■ The individual Defendants, in their individual capacities, claim they are

---

107. *Larson by Larson v. Miller*, 76 F.3d 1446, 1454 (8th Cir.1996).

108. *Id.*

109. *Id.*

110. *Runs After v. United States*, 766 F.2d 347, 354 (8th Cir.1985).

111. *Id. See also Larson*, 76 F.3d at 1456; *Richmond v. Board of Regents of the Univ. of Minn.*, 957 F.2d 595 (8th Cir.1992) (applying intracorporate conspiracy doctrine to preclude § 1985 claim against state university and various university officials).

112. Notwithstanding the intracorporate immunity doctrine, Plaintiffs' claims under

§ 1985(3) fail due to a lack of sufficient facts. Plaintiffs attempt to prove the conspiracy by stating that: (1) in accordance with DHS policy, McCook could not hire Holmstrom without having the hiring decision approved by Williams and Knickrhem; and (2) following the internal investigation that revealed McCook was attempting to circumvent the competitive hiring process, (a) Williams and Knickrhem took no action, and (b) Williams and McCook put in a request to terminate a hiring freeze on the Grade 24 position. Speculation and conjecture do not suffice to prove the existence of a conspiracy. *Mettler v. Whitledge*, 165 F.3d 1197, 1206 (8th Cir.1999).

entitled to qualified immunity on all of Plaintiffs' claims. Qualified immunity is a threshold question.

> In a suit against an officer for an alleged violation of a constitutional right, the requisites of a qualified immunity defense must be considered in proper sequence. Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." The privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." [113]

Qualified immunity is a question of law; however, if there is a genuine dispute concerning predicate facts material to the qualified immunity issue, there can be no summary judgment.[114] Qualified immunity is an affirmative defense for which Defendants carry the burden of proof.[115]

> The first question that must be asked by a court required to rule upon qualified immunity is: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" [116] If

no constitutional right would have been violated were the allegations established, the inquiry into qualified immunity ends; however, if a violation could be made out on a favorable view of the plaintiff's claims, the second step is to ask whether the allegedly violated right was clearly established.[117] The "clearly established" inquiry should be undertaken in view of the specific context of each case. The dispositive inquiry in determining whether a right is clearly established is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." [118] If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is proper.[119]

The qualified immunity defense fails if an official violates a clearly established right because "a reasonably competent public official should know the law governing his conduct." [120] The Eighth Circuit has taken a broad view of what constitutes "clearly established law" for the purpose of qualified immunity, requiring some but not precise factual correspondence with precedents and demanding that officials apply "general, well-developed legal principles." [121]

In *Lockridge v. Board of Trustees of Univ. of Arkansas,*[122] a 5 to 4 decision, the Eighth Circuit found that the defendants in a discrimination case were not entitled

---

**113.** *Saucier v. Katz,* 533 U.S. 194, 200–201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) (internal citations omitted).

**114.** *Greiner v. City of Champlin,* 27 F.3d 1346, 1352 (8th Cir.1994).

**115.** *Sparr,* 306 F.3d at 593.

**116.** *Saucier,* 533 U.S. at 201, 121 S.Ct. 2151. See also *Lockridge,* 315 F.3d 1005.

**117.** *Id.*

**118.** *Id.* at 202, 121 S.Ct. 2151.

**119.** *Id.*

**120.** *Sparr,* 306 F.3d at 593 (citing *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).

**121.** *Id. See also Boswell v. Sherburne County,* 849 F.2d 1117, 1121 (8th Cir.1988).

**122.** 315 F.3d at 1009.

to qualified immunity because the plaintiff failed to set forth a prima facie case of discrimination. The case before me is distinguishable from *Lockridge*. Here, a prima facie case of discrimination has already been set forth and rebutted by the articulation of a legitimate, nondiscriminatory reason for the hiring of Linda Holmstrom. I have found that there is a question of fact as to whether Defendants discriminated against Plaintiffs. A reasonable jury could infer that federal rights prohibiting intentional race discrimination were violated by Defendants' actions in hiring Holmstrom.

The next question must be whether those allegedly violated rights were clearly established. The rights for which Plaintiffs have remaining claims against Defendants in their individual capacities are: § 1981, the First Amendment, the Fourteenth Amendment, and retaliation, all remedied under § 1983. To establish a § 1983 violation, Plaintiffs must show that Defendants, while acting under color of state law, deprived them of a federal right.

According to Plaintiffs: "Because the right not to be discriminated against and the right of equal protection are well established constitutional rights, a reasonable person ... would have known that they were violating the constitutional rights of the Plaintiffs" when they conspired to circumvent the state hiring policy by borrowing a Grade 99 position from another division and placing a less qualified white female in this position with the purpose and intent of later transferring her into a competitive Grade 24 position without any competition and without giving Plaintiffs an opportunity to apply and be considered for the Grade 24 position. I agree.

I am confident that all remaining violations asserted by Plaintiffs implicate general, well-developed legal principles. Taking Plaintiffs factual allegations as true and drawing all inferences from the underlying facts in their favor, I find that reasonable officials engaging in the alleged activity would have known that their conduct was in violation of Plaintiffs' constitutional rights. Therefore, the individual Defendants are not entitled to qualified immunity. Defendants' request for summary judgment on the issue of qualified immunity is DENIED.

## IX. Punitive Damages

Defendants argue that Plaintiffs have presented no proof of purposeful discrimination or retaliation and no proof of evil intent by any of the Defendants. Plaintiffs, on the other hand, believe the evidence set out above is sufficient to allow a reasonable jury to conclude that Defendants' actions were motivated by an evil intent or taken in reckless or callous disregard of Plaintiffs' federally protected rights.

Punitive damages may not be assessed against a government, government agency or political subdivision under Title VII.[123] Accordingly, punitive damages cannot be assessed against DHS.

A jury may be permitted to assess punitive damages in an action under § 1983 when it is shown that the defendant's conduct was motivated by evil motive or intent or when the defendant's conduct involves reckless or callous indifference to the federally-protected rights of others.[124] In this

---

123. *Id.*

124. *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).

case, the jury could find that Plaintiffs are entitled to punitive damages against Defendants in their individual capacities under § 1983. However, I reserve ruling on the availability of punitive damages until the close of trial. At that point, the parties will be permitted to argue whether a jury instruction on punitive damages should be given.

### Conclusion

Defendants' summary-judgment motion (doc. no. 18) is GRANTED in part and DENIED in part. The following claims remain for trial: (1) DHS's violation of Title VII regarding Plaintiffs' second EEOC charges; (2) DHS's violation for failure to promote; (3) violations of § 1981, First Amendment, Fourteenth Amendment, and for retaliation under § 1983 (against Knickrhem, Williams, and McCook in their individual capacities and, with regard to injunctive relief, in their official capacities); and (4) availability of punitive damages.